

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION TWO</u>

| | | |
|---|---|---|
| TRINA DORSEY, | ) | No. ED109723 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | Cause No. 19SL-CC02732 |
| | ) | |
| JPAM CONSULTING, INC., | ) | Honorable Nancy W. McLaughlin |
| | ) | |
| Appellant. | ) | Filed: April 19, 2022 |

<u>Introduction</u>

JPAM Consulting, Inc. (JPAM) appeals the trial court's judgment denying its motion to set aside the default judgment entered in Trina Dorsey's (Dorsey) suit for damages. Because JPAM failed to meet its burden of proof to set aside the default judgment, we affirm.[1]

<u>Background</u>

JPAM is a business that operates skilled nursing facilities throughout the St. Louis region. Dorsey was employed with JPAM from September of 2017 until July 23, 2018, when JPAM terminated her employment. On July 8, 2019, Dorsey filed a petition for damages against JPAM. As relevant to the issues raised on appeal, Dorsey alleged violations of the Missouri Human Rights

---

[1] Respondent filed a motion on appeal for an award of attorney's fees, which was taken with the case. We deny the motion.

Act (MHRA)[2] and the Whistleblower's Protection Act,[3] asserting JPAM created a hostile work environment based on her gender and retaliated against her on the basis of her gender by terminating her employment for reporting sexual harassment in the workplace.

JPAM received service on July 17, 2019, and thus its answer was due August 16, 2019.[4] On August 19, 2019, Michael Ohlman (Ohlman) contacted the attorney for Dorsey, Ryan Furniss (Furniss). Ohlman identified himself as corporate counsel for JPAM, indicated JPAM's desire to pursue settlement, and requested additional time to file an answer. Furniss agreed not to seek default until September 13, 2019. Ohlman did not file an answer by that date, and on September 20, 2019, Dorsey filed a motion for default. The trial court granted an interlocutory default order in October of 2019. After a hearing to determine damages, the trial court entered judgment in favor of Dorsey and against JPAM, and it awarded Dorsey $31,832 in compensatory damages, $68,320 in punitive damages, and $14,000 for attorney's fees, for a total award of $114,152.

JPAM received a copy of the default judgment on May 10, 2020. On September 15, 2020, JPAM, acting though different counsel, filed a motion to set aside the default judgment pursuant to Rule 74.05(d).[5] The motion was unverified, and, while JPAM attached several exhibits supporting its asserted meritorious defense, it did not attach any affidavits. At a hearing on the motion, JPAM did not introduce any affidavits or sworn testimony but presented only oral argument. Regarding whether JPAM had been reckless in failing to file an answer, counsel for JPAM presented the following argument. After service, John Brencick, JPAM's owner, contacted his cousin Ohlman, who was an attorney licensed in Illinois and who had handled settlements for JPAM in the past, to engage in settlement discussions with Dorsey. When Ohlman realized Dorsey

---

[2] Section 213.010, RSMo. 2000, et seq.
[3] Section 285.575, RSMo. 2000, et seq.
[4] See Mo. R. Civ. P. 55.01 2019 (answer is due 30 days after service).
[5] All rule references are to Mo. R. Civ. P. 2020, unless otherwise indicated.

was not interested in reaching a settlement, Ohlman advised JPAM to hire Missouri counsel to file an answer. However, due to a "communication gap," JPAM was unaware Ohlman was not still pursuing settlement until JPAM received the notice of default judgment. Upon questions from the trial court, JPAM agreed it had no evidence its officers or directors attempted to contact Ohlman or the courts regarding the status of the case between August of 2019 and May of 2020.[6]

After the hearing, JPAM filed a verified declaration by Ohlman. In the declaration, Ohlman outlined both his communications with Mark Brencick, an administrator with JPAM, and the reasons for the communication failure between himself and other officers of JPAM. Ohlman further declared he did not realize JPAM still believed he was pursuing settlement with Dorsey until John Brencick emailed him a copy of the default judgment.

The trial court entered judgment denying JPAM's motion to set aside the default judgment on the ground that "the Court finds [JPAM] has failed to show good cause to set aside the default judgment." This appeal follows.

### Standard of Review

"A motion to set aside a default judgment is governed by the sound discretion of the trial court." Hinton v. Proctor & Schwartz, Inc., 99 S.W.3d 454, 458 (Mo. App. E.D. 2003). We will interfere with the trial court's discretion only if the record convincingly demonstrates abuse. Id. "While we afford the trial court broad discretion in granting a motion to set aside a default judgment and only narrow discretion in denying a motion to set aside a default judgment, a party moving to set aside a default judgment has the burden of proof to convince the trial court that they are entitled to relief." Irvin v. Palmer, 580 S.W.3d 15, 23 (Mo. App. E.D. 2019).

---

[6] JPAM brought most of its later problems on itself by engaging the legal services of a cousin from Chicago, Illinois. We are troubled by the fact that Ohlman held himself out as JPAM's corporate counsel, despite neither being licensed to practice law in the State of Missouri, nor having entered an appearance in this matter *pro hac vice*. Corporations should hire appropriate legal counsel in a timely manner.

3

In its sole point on appeal, JPAM argues that the trial court erred in failing to set aside the default judgment because JPAM presented evidence of a meritorious defense to the underlying suit and had good cause for failing to respond to the petition, in that the default occurred due to a miscommunication between JPAM and Ohlman. We disagree.

The party seeking to set aside a default judgment bears the burden of proof to convince the trial court it is entitled to relief. Irvin, 580 S.W.3d at 23. Rule 74.05(d) provides that in order to set aside a default judgment, the moving party must establish: (1) a meritorious defense to the underlying suit; (2) good cause for having failed to respond to the petition; and (3) that the motion to set aside was filed within a reasonable time not to exceed one year. Id. Dorsey concedes the meritorious defense, and the record shows JPAM filed its motion within one year.[7] Thus, the issue before this Court is whether JPAM had good cause for having failed to respond to the petition.

It is settled law in Missouri that a motion to set aside a default judgment does not prove itself and "*must* be verified or supported by affidavits or sworn testimony produced at the hearing on the motion." Id. (citation omitted); see also In re Marriage of Callahan, 277 S.W.3d 643, 644 (Mo. banc 2009) (noting motion to set aside default judgment "does not prove itself" and must be supported by affidavit or sworn testimony). JPAM met none of these requirements here. First, the motion to set aside default judgment was not verified. Rule 74.05(d) does not expressly require a motion to set aside a default judgment to be verified; yet, Missouri courts have routinely held that a motion to set aside a default judgment must itself be verified or otherwise be supported by

---

[7] Although Dorsey argues JPAM failed to meet the reasonable-time element, because we find that JPAM failed to prove it had good cause for not responding to the petition, it is not necessary for this Court to discuss whether JPAM filed its motion within a reasonable time.

sworn testimony or affidavit testimony. <u>See</u>, <u>e.g.</u>, <u>Saturn of Tiffany Springs v. McDaris</u>, 331 S.W.3d 704, 712-13 (Mo. App. W.D. 2011).

Second, JPAM did not support its unverified motion to set aside the default judgment with affidavits supporting its argument that JPAM had good cause for having failed to respond to the petition. "Conclusory and uncorroborated allegations are insufficient to satisfy the good cause element of [a] motion to set aside default judgment." <u>Irvin</u>, 580 S.W.3d at 23. Bare allegations without evidentiary support in the form of an affidavit, deposition, or live testimony or a verified motion are insufficient grounds for setting aside a default judgment. <u>Id.</u>

While JPAM submitted a verified declaration from Ohlman after the hearing, a verified declaration is not an affidavit. "An affidavit is a written declaration on oath sworn to by a person before someone authorized to administer such oath." <u>Hinton</u>, 99 S.W.3d at 458; <u>see also</u> <u>Robertson v. Robertson</u>, 192 S.W. 988, 989 (Mo. 1917) (defining affidavit as "a written statement or declaration, sworn to before some officer authorized by law to administer oaths, and signed at the end by the affiant"). "Courts, judges, justices, clerks of courts, notaries public, certified court reporters, and certified shorthand reporters are authorized to administer oaths." <u>Id.</u> Ohlman's declaration was not sworn to before someone authorized to administer such an oath, but, rather, was merely verified by Ohlman and Mark Brencick as true and correct. Thus, for the purposes of Rule 74.05(d), the document signed by Ohlman was an unsworn statement.

Further, at the hearing on the motion, JPAM presented no sworn testimony. At the hearing, in response to an inquiry from the trial court, JPAM confirmed that it did not intend to call any witnesses but would rely on the documentation attached to its brief. Counsel for JPAM summarized JPAM's position through oral argument, explaining that JPAM had promptly contacted Ohlman to handle the petition but there was a communication breakdown between

5

Ohlman and JPAM, and arguing that, while this communication breakdown demonstrated carelessness, it did not show a deliberate flaunting of the court rules. However, argument by counsel does not satisfy the burden of proof to produce competent and sworn testimony or evidence. Irvin, 580 S.W.3d at 23. Argument by counsel regarding the good cause element is not competent evidence. See Agnello v. Walker, 306 S.W.3d 666, 675 (Mo. App. W.D. 2010). Because JPAM failed to file a verified motion or to support its motion with affidavits or sworn testimony, it failed to meet its burden of proof to set aside the default judgment. See Callahan, 277 S.W.3d at 644.

Nevertheless, at oral argument on appeal, JPAM argued that, as a result of the COVID-19 pandemic, there were complications with notarizing and filing Ohlman's declaration as a properly sworn affidavit. JPAM requested that, under the unique circumstances, this Court make an exception for Ohlman's declaration and consider it as if it were a notarized affidavit. We recognize that the COVID-19 pandemic created new and unforeseen obstacles for litigants. We understand that JPAM, as a business operating skilled nursing facilities, faced additional burdens on their employees and principals when it received notice of the default judgment. However, while we are sympathetic to JPAM's claim that the COVID-19 pandemic prevented it from properly notarizing Ohlman's declaration, there was a system in place for remote notarization to assist those individuals who could not meet a notary in a live, in-person setting. Specifically, on March 13, 2020, Governor Mike Parson signed an executive order allowing remote notary services in Missouri,[8] which granted proper notarization status where the signer and the notary were both

---

[8] Mo. Exec. Order No. 20-14 (March 13, 2020), https://governor.mo.gov/press-releases/archive/governor-parson-signs-executive-order-20-14-regarding-notary-public-response.

present on live, interactive video conference software. The Missouri Secretary of State made permanent this rule for remote notarization.[9]

Although the law favors a trial on the merits, the law defends with equal vigor the integrity of the judicial process and procedural rules. Irvin, 580 S.W.3d at 23. We would prefer for this case to be tried on the merits, especially as Dorsey acknowledges a meritorious defense; however, it is settled law that a motion to set aside a default judgment is not self-proving and must be verified or supported by affidavits or sworn testimony. See Callahan, 277 S.W.3d at 644; Irvin, 580 S.W.3d at 23; McDaris, 331 S.W.3d at 712-13. This Court is bound by Article V, section 2 of the Missouri Constitution to follow controlling decisions of the Missouri Supreme Court, see State v. Merchant, 363 S.W.3d 65, 69 (Mo. App. E.D. 2011), and thus, regardless of our inclination, we do not have the authority to modify the current state of the law. Without competent evidence of good cause for the default, the trial court did not abuse its discretion in denying JPAM's motion to set aside the default judgment.

Point denied.

## Conclusion

JPAM failed to meet its burden of proof on its motion to set aside the default judgment because it did not verify the motion or support the motion with affidavits or sworn testimony. We affirm the judgment of the trial court.

_____
Gary M. Gaertner, Jr., Judge

Robert M. Clayton III, P.J., and
Thomas C. Clark II, J., concur.

---

[9] Mo. Rules (Remote Online Notarization) (January 15, 2021), https://www.nationalnotary.org/knowledge-center/news/law-updates/mo-rules-remote-online-notarization-2021.