

## MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| **MAY & MAY TRUCKING, L.L.C.,** | ) | |
| | ) | **WD76488** |
| Appellant, | ) | |
| v. | ) | **OPINION FILED:** |
| | ) | |
| **PROGRESSIVE NORTHWESTERN** | ) | **May 13, 2014** |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Cole County, Missouri**
**Honorable Daniel Richard Green, Judge**

**Before Division Three:  Anthony R. Gabbert, P.J.,**
**Victor C. Howard, and Thomas H. Newton, JJ.**

May & May Trucking, L.L.C. (M & M), appeals the circuit court's summary judgment for Progressive Northwestern Insurance Company (Progressive).  We reverse and remand.

### Factual and Procedural Background

M & M purchased an insurance policy from Progressive to cover a dump truck.  In 2005, Mr. Joseph May, owner of M & M, leased the dump truck to Mr. Trent Quinn, who took the dump truck along with his dump truck to New Orleans so that they could work jobs cleaning up the aftermath of Hurricane Katrina.  In September 2006, while the dump truck was still in New Orleans, M & M purchased additional insurance coverage to increase the policy limits from $75,000 to $125,000.  In December 2006, Mr. May told an insurance agent that the dump truck had been reported stolen to the authorities in Louisiana.  He stated that the loss was incurred after

1

the increase in coverage. Mr. May filed a claim with Progressive for the loss. Instead of paying, Progressive treated the matter as a fraudulent claim and investigated Mr. May and Mr. Quinn. It also limited recovery to the former policy limit of $75,000.

In April 2007, Progressive offered to pay $75,000 to M & M, which M & M refused. During the same month, while the parties were in negotiations about the amount of the policy limit, Mr. May informed Progressive that the dump truck had been found. Progressive located the dump truck, determined that it was salvageable, and received an estimate of repairs at $10,200. Progressive delivered the dump truck to a nearby repair facility in Louisiana. Progressive paid a total of $14,206.48 for repairs. Mr. May demanded additional compensation for damages and loss. Progressive refused to pay.

In 2008, M & M filed a petition against Progressive for breach of contract. M & M alleged that it suffered a loss and damage to the dump truck in an amount exceeding $17,000. It sought damages for vexatious refusal to pay the claim according to the contract because Progressive failed and refused to pay its loss for a period of more than thirty days after M & M demanded payment and that such refusal was without reason. Progressive filed an answer, stating that M & M failed to state a claim, denying all allegations.

In 2012, Progressive filed a motion for summary judgment on the breach of contract claim and the ancillary claim[1] of vexatious refusal to pay. It referenced M & M's petition (Exhibit A), the insurance policy (Exhibit B), Ms. Mary Mosley's affidavit (Exhibit C), M & M's response to Progressive's appraisal request (Exhibit D), and a claim payment detail (Exhibit E). Progressive asserted that the claim for breach of contract was without supporting evidence because payment, exceeding the amount agreed to by M & M, had been made. As for the

---

[1] *See Shirkey v. Guarantee Trust Life & Ins. Co.*, 141 S.W.3d 62, 67 n.4 (Mo. App. W.D. 2004) (stating that the request of damages for insurer's vexatious refusal to pay is additional to those resulting from a breach of the insurance contract).

vexatious refusal, Progressive argued that M & M "failed to produce or elicit any evidence whatsoever that [it] had acted vexatiously."

M & M filed a response, denying some of the allegations. For support, it referenced Exhibits A and B, Mr. May's and Mr. Quinn's affidavits, portions of Progressive's claim file, and a report of the missing trucks from Louisiana police. Additionally, M & M challenged Exhibit C for lack of personal knowledge; it also added related facts under the numbered paragraphs, with specific references to relevant documents. The circuit court granted Progressive summary judgment. M & M appeals.

**Standard of Review**

We review the granting of summary judgment *de novo*. *Shirkey v. Guarantee Trust & Life Ins. Co.*, 258 S.W.3d 885, 888 (Mo. App. W.D. 2008). We view the record in the light most favorable to the nonmovant. *Zipper v. Health Midwest*, 978 S.W.2d 398, 409 (Mo. App. W.D. 1998). We also provide favorable inferences therefrom to the nonmovant. *Id.* "Facts asserted in affidavits or otherwise in support of a party's motion are taken as true unless contradicted by the [nonmovant]'s response to the summary judgment motion." *Id.*

**Legal Analysis**

M & M raises three points. We find the first point dispositive. In that point, M & M argues that the circuit court erred in granting summary judgment in reliance on the affidavit of Ms. Mosely, one of Progressive's claim representatives who was not directly involved with M & M's claim, because "the affidavit [wa]s not based on personal knowledge and substantially refers to hearsay evidence, and it thus constitutes inadmissible evidence."[2]

---

[2] Progressive claims that this point is waived because M & M did not move to strike the affidavit. Because M & M objected to the affidavit in its response, the point is preserved. *See Gal v. Bishop*, 674 S.W.2d 680, 684 (Mo. App. E.D. 1984) (stating that an affidavit must be objected to in order to preserve challenges to it).

Summary judgment is improper when the record demonstrates genuine issues of material fact or the law does not warrant a favorable judgment. *Shirkey*, 258 S.W.3d at 888. Defendants may seek summary judgment in their favor "with or without supporting affidavits." Rule 74.04(b).[3] The motion for summary judgment must include a list of uncontroverted material facts, with each fact stated in a separately numbered paragraph. Rule 74.04(c). Each fact must be followed by a specific reference to "pleadings, discovery, exhibits or affidavits that demonstrate the lack of a genuine issue as to such fact[]." *Id.* Affidavits must "be made on personal knowledge, . . . set forth such facts as would be admissible in evidence, and . . . show affirmatively that the affiant is competent to testify to the matters stated therein." Rule 74.04(e). If an affidavit does not show a basis for personal knowledge, it is considered hearsay and is invalid. *See Perry v. Kelsey-Hayes Co.*, 728 S.W.2d 278, 280 (Mo. App. W.D. 1987). The circuit court is not allowed to rely on hearsay in granting a motion for summary judgment. *See Midwest Precision Casting Co. v. Microdyne, Inc.*, 965 S.W.2d 393, 396 (Mo. App. E.D. 1998).

Here, Progressive provided a list of uncontroverted facts and cited to Ms. Mosely's affidavit for support. In the affidavit, Ms. Mosely stated that her statements therein were made to the best of her "information and knowledge." She stated that she was a claims representative with Progressive. Most of her statements concerning the investigation and other related issues about the policy limit were recounts of what Mr. May told a claims representative. Her other statements were related to the contractual relationship between Progressive and M & M.

M & M argues that Ms. Mosely's affidavit did not provide a sufficient foundation for personal knowledge. M & M claims that Ms. Mosely's statement describing her as a claims representative was insufficient to show her involvement in its claim. M & M further asserts that Ms. Mosely's statements indicate that she relied on documents to make her statements and thus

---

[3] Rule references are to Missouri Court Rules 2008.

such statements should not have been admitted because they constituted inadmissible hearsay. M & M relies on *Allen v. St. Luke's Hospital of Kansas City*, 532 S.W.2d 505 (Mo. App. 1975) for support. In *Allen*, the appellate court reversed a summary judgment because the affidavits used to support it were inadmissible hearsay. *Id.* at 508. The court concluded that the affidavits were hearsay because the affiants did not have personal knowledge of the statements but relied on documents that were not admissible. *Id.*

Affidavits need not declare that statements are made from personal knowledge to be valid under Rule 74.04. *Morley v. Ward*, 726 S.W.2d 799, 802 (Mo. App. E.D. 1987) (holding that Rule 74.04(e) does not require a declaration that the affidavit was made on personal knowledge). However, when such a declaration is omitted, the statements within the affidavit must indicate a basis for personal knowledge. *See Price v. Mo. Pac. R. R. Co.*, 755 S.W.2d 29, 31 (Mo. App. E.D. 1988); *see also Midwest Precision*, 965 S.W.2d at 395; *Jones v. Pinkerton's, Inc.*, 700 S.W.2d 456, 461 (Mo. App. W.D. 1985). The basis for personal knowledge may also be gleaned from the role of the affiant as stated in the affidavit. *See Rustco Prods. Co. v. Food Corn, Inc.*, 925 S.W.2d 917, 924 (Mo. App. W.D. 1996) (stating that the affiant provided his role in the movant company as director, which was sufficient to establish his personal knowledge of the statements, concerning the agreement, the sale and delivery of the product, the terms of agreement, and the amount owed by the nonmovant company); *Wilson v. St. Louis Area Council, Boy Scouts of Am.*, 845 S.W.2d 568, 573-74 (Mo. App. E.D. 1992) (stating the affiant's role as executive and secretary for movant company established his personal knowledge by showing his familiarity, with its organization and structure, which was the subject matter of his affidavit).

Here, the statements within Ms. Mosely's affidavit indicate that she did not have any personal knowledge, but relied on other sources. Her roles as the senior casualty claims

specialist for Progressive and the custodian of its records were not alleged in her affidavit. Additionally, those roles alone do not show her personal knowledge of the facts stated therein because the subject matter was of communications between the claims representative and Mr. May, Mr. Quinn, and others who were interviewed. Without an allegation that the claims representative reported each transaction to her, we cannot determine that her role supports a basis for personal knowledge. Those roles, similar to those of the affiants in *Wilson* and *Rustco*, imply that her personal knowledge is limited to technical matters, such as record keeping and the policy for handling claims. Because she relied on documents to form her statements, the affidavit was hearsay. *Allen*, 532 S.W.2d at 508 ("An affidavit which relates information gained from other documents relates hearsay, not such facts as would be admissible in evidence, and is not sufficient to support a motion for summary judgment.") The affidavit should not have been considered. *See Fitzpatrick v. Hoehn*, 746 S.W.2d 652, 655 (Mo. App. E.D. 1988). The circuit court thus erred in relying on the affidavit.

Absent the affidavit, the summary judgment cannot stand. There is no support for the alleged uncontroverted material facts. Progressive points to the claim file as other support. But Progressive did not rely on the claim file in its pleadings. Although M & M attached the claim file as an exhibit in support of its affidavits, it cited to specific portions of it to show that certain of Progressive's uncontroverted facts were actually controverted. As M & M asserts, allowing Progressive to now use the claim file without specific citations to it in its pleadings would impose a burden on this court to search the record. We do not perform this function. *See Am. Family Mut. Ins. Co. v. Pettigrew*, 916 S.W.2d 893, 894-95 (Mo. App. W.D. 1996) (stating that reliance on a record without providing specific references is impermissible).

Additionally, the claim file consists of several pages of the claims representative's notes concerning communications with Mr. May and others related to the loss and damages claim. Thus, even if relied on by Progressive, the facts therein, as argued by Progressive in the respondent's brief, would contradict M &M's facts and result in a genuine dispute of material facts. A summary judgment is improper when genuine disputes of material facts exist. *Shirkey*, 258 S.W.3d at 888. Thus, the motion should have been denied by the court.

Also, M & M asserts a vexatious refusal claim against Progressive. Vexatious refusal requires a showing that the insurer's refusal to compensate for "the loss was willful and without reasonable cause or excuse, as the facts would have appeared to a reasonable person before trial." *Shirkey*, 258 S.W.3d at 888-89. Generally, whether an insurer acted reasonably is a question of fact for the jury, and thus is improper for a court to determine in granting a summary judgment. *Id.* at 889. However, in cases in which the underlying facts are undisputed, that question of fact becomes a question of law for the court to properly decide. *Wunsch v. Sun Life Assurance Co. of Canada*, 92 S.W.3d 146, 153 (Mo. App. W.D. 2002).

We do not believe that this is a case in which the underlying facts are undisputed such that a question of reasonableness can be turned into a question of law. We disagree with Progressive's claim that M & M failed to controvert its statement of facts because the affidavits M & M relied on did not contradict Progressive's facts. A party appropriately disagrees with an uncontroverted fact by denying it and referencing an affidavit, exhibit, or a document "that demonstrate[s] specific facts showing that there is a genuine issue for trial." Rule 74.04(c)(2). Progressive showed facts indicating that it was a reasonable response to investigate the validity of the loss claim before paying it based on the surrounding circumstances. However, M & M presented facts indicating that the extent and nature of the investigation was willful and without

reasonable cause or excuse. *See Hopkins v. Am. Econ. Ins. Co.*, 896 S.W.2d 933, 941 (Mo. App. W.D. 1995). Mr. May's and Mr. Quinn's affidavits stated that the claims representative immediately and unreasonably suspected fraud and refused to acknowledge evidence that the dump truck had been stolen. Furthermore, the affidavits stated that Progressive acknowledged in February 2007 that it had a duty to pay for the loss of the vehicle, but withheld payment. Progressive was concerned about the coverage date for the new policy limit, despite facts known to Progressive that the loss occurred after the effective date of coverage. The facts thereby controverted Progressive's list of facts. Thus, Progressive was not entitled to judgment on this claim as a matter of law. We grant M & M's first point and decline to address the remaining points.

### Conclusion

Therefore, we reverse and remand.

/s/ THOMAS H. NEWTON
Thomas H. Newton, Judge


Gabbert, P.J., and Howard, J. concur.

8